STATE HIGHWAY COMMISSION v COPPER RANGE RAILROAD
COMPANY

Docket No. 45684. Submitted May 13, 1980, at Marquette.—Decided
April 7, 1981.

The Michigan State Highway Commission commenced an emi-
nent domain action by filing a petition in Houghton Circuit
Court for condemnation of certain real property located in the
city of Houghton, Michigan, required for the improvement of a
highway. Copper Range Railroad Company owned the property
in fee simple. Donald and Sharon Salo leased the land and
owned the buildings and fixtures located thereon. The Superior
National Bank and Trust Company was the mortgagee of the
property. The Salos and Copper Range entered into a settle-
ment agreement specifying how the condemnation award would
be divided between them. Steven D. Condon, J., permitted the
Highway Commission to cross-examine Mr. Salo regarding the
settlement agreement he entered into with Copper Range. The
Salos appeal, alleging that the trial court erred in allowing
evidence of the settlement and of a provision in the Salos' lease
with Copper Range providing for a year-to-year tenancy with
the provision that either party could terminate the leasehold
by giving the other party notice at least 60 days prior to the
end of the yearly period. *Held:*

1. Evidence of the compromise settlement agreement between
the Salos and Copper Range was inadmissible since the agree-
ment was made in contemplation of litigation and did not
represent an arm's-length transaction between a willing seller
and a willing buyer.

2. The amount of rental under the lease between the Salos
and Copper Range was relevant to show income valuation.
However, once plaintiff convinced the trial court to instruct the
jury to determine the value of the entire parcel, the plaintiff
should not have been permitted to use the cancellation clause

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 27 Am Jur 2d, Eminent Domain §§ 247, 270, 427.
[2] 27 Am Jur 2d, Eminent Domain §§ 286, 433.
Eminent domain: admissibility, on issue of value of condemned real
property, of rental value of other real property. 23 ALR3d 724.

in the lease to denigrate the value of the defendants' separate leasehold estate or the fee owner's interest in the land without the buildings.

Reversed and remanded.

1. EMINENT DOMAIN — TRIAL — EVIDENCE — SETTLEMENT AGREE-MENTS.

Evidence of an agreement among the owners of various interests in real property subject to an action for eminent domain as to how the award will be divided is not admissible in the eminent domain action to prove the value of the property.

2. EMINENT DOMAIN — LEASEHOLD — TRIAL — EVIDENCE OF PROPERTY VALUE.

The terms of a lease are relevant evidence of the value of a property subject to an eminent domain action but are not admissible in the action to denigrate the value of the separate interests in the land where the plaintiff has convinced the court to instruct the jury to determine the value of the entire parcel as a unit.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *Donald K. Goulais,* Assistants Attorney General, for plaintiff.

*Wisti & Jaaskelainen* (by *Michael E. Makinen),* for defendants Salo.

Before: MACKENZIE, P.J., and BRONSON and ALLEN, JJ.

MACKENZIE, P.J. Plaintiff commenced this eminent domain action by filing a petition for condemnation of certain real property in the city of Houghton, Michigan, required for the improvement of Highway M-26. Defendants' interests in the property were as follows: Copper Range Railroad Company, owner in fee simple; Donald and Sharon Salo, lessees of the land and owners of the buildings and fixtures located thereon; Superior National Bank & Trust Company, mortgagee.

From a jury verdict that the value of the property, buildings, and fixtures was $53,300, defendants Salo bring this appeal as of right.

The first issue is whether the trial court erred in admitting evidence of a settlement agreement between two of the defendants, the Salos and Copper Range, specifying how the condemnation award would be divided between them. Under the agreement, Copper Range received a total of $20,800 for its interest in the property regardless of the amount of the condemnation judgment or settlement. In return, Copper Range agreed to take no further part in the litigation and to assign its interest in the property to the Salos. Over objection, the trial court permitted plaintiff to cross-examine Mr. Salo regarding the settlement agreement and further allowed admission of the agreement into evidence to determine the amount of just compensation.

The Salos argue that any evidence of settlement is precluded by MRE 408, which reads as follows:

"Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

No purpose for admitting the evidence of settlement has been asserted other than so that plaintiff could dispute the amount of the claim. The trial judge stated that he felt the evidence was material because "it could be of assistance to the jury in arriving at what they would consider to be fair and just compensation".

The question of whether to admit the evidence was crucial since the amount of the claim was the only issue litigated and there was great disparity between the parties' experts' estimations of fair and just compensation. Plaintiff requested a verdict of $45,565, based on testimony of its witnesses that the property was valued at $38,000 and the Salos' equipment at $7,565. Two defense witnesses testified that the value of the proeprty was $84,500 and $82,110, respectively. Plaintiff's expert testifed that the land had an independent value of $20,350, while defendants' experts valued it at $35,010 and $29,200, respectively. Counsel for plaintiff used the evidence of the settlement to attack one of defendants' expert's estimate of the value of the land. Thus, when confronted with the jury's verdict of $53,300, we cannot say that admission of the evidence constituted harmless error.

Plaintiff argues that admission was not precluded by MRE 408 because the evidence was not of an offer of settlement but of a settlement agreement. Plaintiff also points out that the parties to the agreement were the two defendants and that plaintiff was not a party to the agreement. We find these arguments unpersuasive. The Federal Advisory Committee Note to the identical Federal rule, FRE 408, states that, in accordance with the policy of the rule, it should apply to settlement agreements affecting the disputed claim as well as offers of settlement:

"As with evidence of subsequent remedial measures, dealt with in Rule 407, exclusion may be based on two grounds. (1) The evidence is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position. The validity of this position will vary as the amount of the offer varies in relation to the size of the claim and may also be influenced by other circumstances. (2) A more consistently impressive ground is promotion of the public policy favoring the compromise and settlement of disputes. McCormick §§ 76, 251. While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto. This latter situation will not, of course, ordinarily occur except when a party to the present litigation has compromised with a third person."

There is some indication in the lower court proceedings that the settlement agreement was reached after plaintiff had offered to settle the amount of compensation for the entire property. Although Copper Range may have been willing to settle, apparently the Salos were not. Moreover, the Salos were able to block settlement because the judge had ruled, at plaintiff's request, that the compensation award could not be divided between the value of the land and the value of the buildings. It is apparent that the agreement was made in contemplation of litigation and did not represent an arm's-length transaction between a willing seller and a willing buyer. Thus, evidence of the compromise was inadmissible under MRE 408.

Defendants also contend that the trial judge erred in admitting evidence of a provision in defendants' lease with Copper Range providing for a year-to-year tenancy with the provision that either party could terminate the leasehold by giving the other party notice at least 60 days prior to the end

of the yearly period. One of plaintiff's expert witnesses testified that, assuming the tenants owned the buildings and one of the parties exercised the termination clause, the value of the buildings would be reduced to salvage value. The witness also testified regarding the rental under the lease and its bearing on the property's worth.

Defendants objected to the evidence on the ground that, at plaintiff's request, the trial judge had ordered the jury to determine the value of the property and buildings as one parcel as if owned by one individual. The instruction, in accordance with MCL 213.378; MSA 8.261(18), assumed that the court would thereafter divide the verdict among the respective parties. However, in the case at bar, division had been provided for in the compromise agreement.

Merely because a party requests that the property interests be valued as if owned by one person, that party is not precluded from introducing evidence of the property's income generating potential. We find that the amount of rental under the lease was relevant to show income valuation. However, once plaintiff convinced the court to instruct the jury to determine the value of the entire parcel, plaintiff should not have been permitted to use the cancellation clause in the lease to denigrate the value of defendants' separate leasehold estate or the fee owner's interest in the land without the buildings.

Reversed and remanded for a new trial.